LUIS RICHARTE *v.* THE STATE.

1. CHARGE OF THE COURT — FILE-MARK. — Unless the transcript shows that the charge to the jury in a felony case has been filed, the paper will be treated as unauthenticated, and the conviction accordingly be set aside. The charge should be filed by the clerk as soon as read, and before it is given in hand to the jury.

2. EXPRESS MALICE, which is the essential constituent of murder of the first degree, is never inferred or implied alone from the act done, or the means used in doing it; it must be proved *aliunde*, like any other fact in the case, by such evidence as may be reasonably sufficient to satisfy and convince the jury of its existence.

APPEAL from the District Court of Cameron. Tried below before the Hon. J. C. RUSSELL.

The conviction was for murder, in Cameron County, and the death penalty was assessed.

The State proved by the witness Moreno, brother of the deceased, that witness and deceased left Brownsville on the day of the killing, travelling the Corpus Christi Road, and that, after riding some six or eight miles, the attention of witness, who was in advance of deceased, was attracted by the struggling of a horse. Witness, on looking back, discovered accused pulling deceased off of the ass he was riding, and after getting deceased off, saw the accused shoot deceased in the head with a pistol. Witness, having ridden up, was compelled by accused to take deceased's pistol from the body and deliver it to accused, after which the accused

rode off. Witness then returned to Brownsville and
reported the killing to the coroner, describing the murderer
as a man wearing a black coat, somewhat faded, a lead-col-
ored hat, and riding a bay horse. Witness buried his brother
the day following, and, three days later, started again on the
same road. At Bendito Rancho, forty-one miles distant,
witness again saw the accused, saluted him, and, in the
presence of Juan Garcia and Pabla Reyes, remarked to
accused, "You travel fast,— you left Brownsville Monday ;"
to which the accused replied, "No, I left Wednesday."
Witness then charged accused with the murder, to which
the accused answered, "What, only one man?" Witness
then asked if he intended to kill others. Accused answered,
in reply, that "the future will show." Accused then rode off
rapidly, dragging his rope. Witness asked Garcia to assist
him in arresting the accused, but the request was refused.
Garcia then told witness that the name of accused was Luis,
and that he was the son of Juliana, the *tamalera* of Browns-
ville.

Witness then rode to the nearest telegraph office, and des-
patched to the coroner the description and name of accused.
The arrest of accused followed shortly. Witness identified
the accused as the murderer, picking him out of a number
confined in jail. Had known him four years by sight, but
not by name.

The account of the interview at the Bendito Rancho was
corroborated by Garcia and Reyes. The justice of the
peace who held the coroner's inquest testified that death
was caused by a gun-shot wound, and that from Moreno's
description of the murderer he supposed him to be the
accused, and that on receipt of the telegram from Moreno
he issued a warrant for the arrest. Had also, on the morn-
ing of the killing, issued a warrant for the arrest of accused
for disturbing the peace on the day before.

By the witnesses C. Richarte, F. Ramirez, J. Ramirez,

and Gutierrez, the first the sister, and the others friends of the accused, he proved that during the whole of the day of the killing he lay in a back room of his mother's house, concealed, avoiding service of the writ for the misdemeanor of the day before. Zuniga, a custom-house officer, who was posted in the house of accused's mother, watching a house opposite, in which smuggling was supposed to be carried on, swore to the presence there of the accused on the day of the killing. Trevino, also a custom-house officer, saw the last witness at the house of accused. The mother of the accused swore to the presence in the house of accused during the day of the murder. The constable swore that he had a warrant for the arrest of accused. Other witnesses swore that accused owned a sore-backed black horse, but had never owned a bay horse, and that he wore a lead-colored hat.

The State, in rebuttal, proved by witnesses Barthelow and Puga that they met the accused on the 24th, three days after the killing, about forty miles from Brownsville, on the Corpus Christi Road, riding a white-faced bay horse.

*F. E. Macmanus*, for the appellant.

*W. B. Dunham*, Assistant Attorney-General, for the State.

WHITE, J. In this case, the appellant was indicted for the murder of one Refugio Moreno, and was found guilty of murder in the first degree.

There is a paper copied into the record as the charge to the jury, but it seems never to have been filed. It has been repeatedly decided that no paper not bearing the file-marks of the clerk will or can be considered as part of the record on appeal; and the rule with regard to the charge of the court is that, " when the court has charged the jury, the

charge should be handed to the clerk, who, before handing it to the jury, should put his file-mark upon it; and the transcript, on appeal, should show the file-marks on the charge and on all other file-papers in the case." *Krebs* v. *The State*, 3 Texas Ct. App. 348; *Haynie* v. *The State*, 3 Texas Ct. App. 223; *Parchman* v. *The State*, 3 Texas Ct. App. 225; *Clampitt* v. *The State*, 3 Texas Ct. App. 638; *Thompson* v. *The State*, 4 Texas Ct. App. 44; *Long* v. *The State*, 4 Texas Ct. App. 81; *Hunt* v. *The State*, 4 Texas Ct. App. 53; *Dishong* v. *The State*, 4 Texas Ct. App. 158; *Doyle* v. *The State*, 4 Texas Ct. App. 253; *Hill* v. *The State*, 4 Texas Ct. App. 559.

Since the charge cannot be considered, because it never has been filed, it follows that the case must be reversed for want of a charge, the statute requiring that, in all felony cases, "the judge shall deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case." Pasc. Dig., art. 3059.

But, had the paper purporting to be the charge in this case been properly authenticated, we should have been compelled to have reversed the case for error of law therein committed. We notice this error, lest it should be fallen into again on a second trial if we failed to point it out and call the attention of the court specially to it.

In the third paragraph of the charge, the following language is used, viz. : "If one take the life of another, without cause or excuse, with an instrument likely to produce death, it is of express malice, premeditated and deliberate killing, and is murder in the first degree." This is error, as has been repeatedly held by the Supreme Court and by this court. "While the law implies malice on proof of voluntary homicide, it does not impute express malice." *Farrer* v. *The State*, 42 Texas, 272. "Express malice, which is the essential constituent of murder of the first degree, is never inferred or implied alone from the act done

or the means used in doing it; it must be proved *aliunde,*
like any other fact in the case, by such evidence as might
be reasonably sufficient to satisfy and convince the jury of
its existence." *Murray* v. *The State,* 1 Texas Ct. App.
417; *O'Connell* v. *The State,* 18 Texas, 344; *Plasters* v.
*The State,* 1. Texas Ct. App. 673; *Primus* v. *The State,*
2 Texas Ct. App. 376; *Jones* v. *The State,* 3 Texas Ct.
App. 150; *Halbert* v. *The State,* 3 Texas Ct. App. 659;
*McCoy* v. *The State,* 25 Texas, 42.

The judgment of the court below is reversed, and the
cause remanded for a new trial.

*Reversed and remanded.*